1547 Eli Lilly and Company against Los Angeles Biomedical. No need to change seats, we are here for Mr. Feldman. On this appeal, your honors, there are three reasons why the PTAB should be reversed to find that Whitaker is anticipatory. Firstly, if you look at the complaint and other judicial admissions from L.A. Biomed in the related district court case, there is no space between those allegations of L.A. Biomed and what Whitaker teaches. And if you take those as admissions of a party opponent, those admissions that one's daily Cialis, arrest and regress fibrosis, means likewise that Whitaker's identical teaching of the same one step, taken daily, necessarily anticipates. The second reason is that the board recognized that the disclosure of Whitaker of a period as long as the patient suffers from erectile dysfunction, they recognized the meaning of that as being months, if not longer. And they made a legal error, though, by taking that separate teaching of as long as the patient suffers and bundling it together with multiple other embodiments, three day and example six, to ask the question of inherency. Is there an inherent teaching of greater than 45 days when the record shows that as long as the patient suffers is an express teaching of that. And you can't undermine one express teaching by pointing to other teachings that may or may not be anticipatory. So that was legal error by the board. The third reason is that if, as L.A. Biomed asserts, the PTAB didn't find that as long as the patient suffers means months, then the final written decision would lack substantial evidence because there's one and only one meaning on the record of what as long as the patient suffers means. So regarding the first point on the judicial admissions, what L.A. Biomed asserted in its complaint in the related district court case in appendix page 5807, they asserted that by instructing physicians in the, quote, once daily, close quote, use of Cialis to treat ED, really has been and is currently actively inducing and encouraging infringement of at least one claim of the 903 patent. So instructing someone to take chitalophilus, the active ingredient Cialis, is, according to L.A. Biomed, an act of infringement or results in an act of infringement. Whittaker, as we know, as Judge Wyson pointed out, repeatedly said on, now we're in a different appendix number, but Whittaker, page 7, appendix 748, repeatedly teaches daily treatment. And so taking what they said as true for this case, that daily chitalophilus, daily Cialis, results in infringement, Whittaker's identical teaching of daily chitalophilus must be anticipatory. As far as the duration, what L.A. Biomed asserted at appendix page 7763 in their infringement contentions, is they recognize that the Cialis label also doesn't say not less than 45 days. It just says take daily without any other statement about the duration. And so what they said is that the Cialis label does not state any limitation on the duration of administration of Cialis for once daily use for erectile dysfunction. And they relied on the absence of an endpoint as evidence of infringing at least 45 days. They likewise relied on disclosure on the Cialis label, again, page 7763, that there were clinical trials, there were long-term clinical trials greater than 45 days, and they relied on that piece of evidence of long-term clinical trials as evidence that Cialis once daily is taught for an extended period of time. But as we saw from example 6 of Whittaker, Whittaker also supports his teachings with long-term clinical trials. And so there's no way for L.A. Biomed to be able to assert, as they have, that once daily chitalophil without a specific end time is infringing without it also being anticipatory. Well, let's try and go through this. So on the page of Whittaker where it suggests day or daily, it says still more preferably one time for 24-hour period. I think that's clearly daily. But then it says preferably for three or more days. That suggests a relatively short period of time. And then in that same sentence it says and still more preferably daily as long as the patient suffers from erectile dysfunction in the absence of therapy. So the board looked at this and it concluded, and I have to review for substantial evidence, that this did not disclose daily continuously every day for 45 days. What they concluded is that it was not an inherent teaching of at least 45 days. Well, they also concluded it wasn't an express teaching. I don't think so, Your Honor. Really? Because how in the world could they conclude there's no anticipation here if I don't read their opinion as concluding there's no express teaching? Because they literally said, therefore, there's no inherent anticipation. They literally only addressed inherent anticipation, Your Honor. No, they said, you argue, and they quote from your brief, that as long as the patient suffers means daily dosing for 45 days. And then they say at the end of the paragraph, we are not persuaded. So they expressly quote from the petitioner's brief and then say, we are not persuaded. I think that looks to me like they're concluding it's not expressly, because the part they quote from you is, Whitaker expressly teaches a much longer treatment period. This is your brief that they're quoting from, and then they end by saying we're not persuaded. Right, and then the analysis they go through on appendix page 9 in the middle of the page, they say, although the ordinary artisan may have understood that patients may suffer from erectile dysfunction for months, if not longer, that best is an obviousness argument. Thus, that argument, the argument relying on as long as, is not sufficient to demonstrate by ponderance of the evidence an inherent description of a continuous administration for at least 45 days. Where are you reading from now?  It says almost exactly at the middle on the right hand side. After the we are not persuaded part. This is the next paragraph after they said we are not persuaded. Correct. And their legal analysis is a lack of inherency. And they say it's not an inherent description, especially in view of Whitaker's teaching that a therapeutically effective period may be as short as three days. They're considering the reference, the teachings together for inherency, and it's the only thing they evaluated it for. At the end of that paragraph, it says, therefore, we determine petitioner is not demonstrated by a preponderance of the evidence that Whitaker anticipates claim one. Are you really of the belief that the board misunderstands whether they're supposed to look at whether the reference expressly discloses an element, that that is somehow something that the patent office fails to appreciate about their job? I think that they missed it here, Your Honor. I think they recognize that in the previous sentence, you say it expressly teaches it and they say we are not persuaded. I should not read that as them finding it doesn't expressly teaching. And then the next parent paragraph reaching whether it nonetheless inherently teaches. I shouldn't read the opinion that way. I should instead read it as they misunderstood that their job was to decide whether it expressly teaches it or not. Your Honor, the only analysis they provide. You're right. They say we're not persuaded. The only analysis they provide is an inherency analysis. They say we're not persuaded right after express noting that you are arguing it's expressly taught by the very language that you're talking about. And the reason they indicate for not being persuaded is a lack of inherent disclosure. Suppose that I actually read the board's opinion as a fact finding that it doesn't expressly teach that. Why don't you start from that point because I don't think you're going to get me. That's fine. Because that doesn't end your argument. No, of course not. So let's go there. Nothing probably does. I'm sure. But go ahead. The duration from Whitaker, there's only one meaning on the record for what as long as a patient suffers means. And the only meaning on the record of what as long as a patient suffers means is that it's months. And there's testimony from Dr. Bivolaqua on that point. Your opposing counsel quarreled with your reading of Dr. Bivolaqua's testimony on the ground that he wasn't talking about this issue. I haven't read the entire context. In fact, I don't think the appendix contained the entire context of Dr. Bivolaqua's statement. But could you fill us in on that? Sure. So we asked Dr. Bivolaqua how long it would take to resolve erectile dysfunction. And he said, and I'm paraphrasing, not quoting, but he said through exercise, et cetera, or lifestyle changes, it would take at least months. He wasn't talking about drug therapy. Well, I'm going to address that. Okay, go ahead. L.A. Bioman is coming back and saying that he wasn't addressing drug therapy. He didn't expressly address drug therapy. It's true. But their arguments kind of run into themselves here. If you look at page 16 of their brief in this case, they are arguing that Whitaker does not teach and would not be understood to be a therapeutic treatment of erectile dysfunction. They say Whitaker simply teaches relief from erectile dysfunction symptoms. And so what L.A. Bioman is elsewhere arguing is that you pick up Whitaker and you read it as pure symptomatic treatment. Now they want to say that there could have been pharmaceutical intervention. There was no treatment. They're claiming to be the first treatment that is curing erectile dysfunction. And so if you read Whitaker as symptomatic relief only, then the earliest, as long as the patient suffers from erectile dysfunction, could be is months, if not longer, due to lifestyle changes. Because there is, according to L.A. Bioman, in the prior art, no teaching and no disclosure anywhere of a curative treatment. So if Ward didn't find, as long as the patient suffers from erectile dysfunction, to be an inherent disclosure, as we said, that lacks substantial evidence. Because there's only one meaning in the record. There's no meaning. There's no meaning from Dr. Bivalaco saying it means something else. They're putting qualifier on it. The qualifier doesn't really hold water. But there's no meaning to someone other than that it would be months. And the testimony, for example, from Dr. Goldstein, in appendix page 7207, is reading Whitaker. He says, I would write a prescription for daily Tadalafil to cover six months. And that's what he would do. And then at page, appendix page 7204, in the middle of paragraph 114, Whitaker's treatment for these patients would likewise be at least months, if not years, or daily as long as the patient suffers from erectile dysfunction. On page 7204 to 7205, in paragraph 115, Dr. Goldstein again explains why it would be at least months, if not longer. Dr. Bivalaco's testimony, where he says, I would expect it to take months, is on page 7527. And so there's only one meaning to what as long as can mean on the record. And that meaning of months falls within the scope of not less than 45 days. So that's why that's taught. And if the board either didn't recognize that or didn't make that finding, it erred. I have a question. Suppose you have, here's what's troubling me about the anticipation argument. And I give it to you in the form of an example. Suppose you have Sudafed, which is treatment for the symptoms of common cold, which can last anywhere from a few days up to, let's say, three weeks. And someone discovers that a treatment of the amount of Pseudoephrine, which I guess is the active ingredient, given daily for 18 days or more will actually cure pneumonia. Discovered it. Is that invention anticipated by the label on Sudafed that says you can take it for as long as the cold lasts? No, it wouldn't be because you don't have the right population. You don't have a population that necessarily has pneumonia. But in Whitaker, to follow your analogy, the Whitaker patients have pneumonia. The Whitaker patients do, but not necessarily all the people that would be covered if you assume that ED, that the patent covers anybody with ED. Right. But Whitaker is more specific to, in your example, pneumonia than the label. The label says a cold generally or a cough generally, i.e. ED. Whitaker is narrower and more specific to the population that it's a population that has circulatory dysfunction due to atherosclerosis, etc. And so the anticipation is even more clear in view of their admissions in the district court case because Whitaker teaches a specific patient population, i.e. patients with ED due to circulatory dysfunction resulting from atherosclerosis or diabetes. Are you saying the answer to Judge Bryson's question depends on how it's claimed? If you say, I have a method of curing pneumonia by treatment with something that hasn't previously been used to cure pneumonia, that's limited to curing pneumonia and would not capture the other uses of Sudafed. One of the things that seems to be troubling here is that it does look as if something has been discovered about fibrosis for ailments other than ED, but that the claims are not specific. And in your raising the issues of anticipation as well, we have claims that are sufficiently broad, perhaps, that are the standard criteria that to anticipate you have to do everything that's in the claim. And here the claims are broad enough intentionally to affect fibrosis from any cause. So this perhaps is whether it's a matter of claim drafting or whether it's something that can't be avoided is something that I've been wrestling with. There's no way of writing a claim that's directed specifically to, let's say, atherosclerosis or something for which these products haven't previously been used. I think that's easy, but I gather that's not the question before us. I believe the question before us is, is Whitaker's treatment of patients with ED due to circulatory dysfunction on a daily basis, not as long as the patient suffers, is that a species within what they're trying to claim? And it is. And we know that because that's what they assert below. They assert that a much broader activity of merely prescribing Cialis without any specific population would be infringing. Here we have Whitaker teaching to a specific fibrotic population. And we dispute the idea that there was any invention here at all because Whitaker taught, take it daily to provide a continuous level in your plasma of the drug to provide more than just symptomatic relief. He expressly distinguished it from on-demand therapy, which is one of L.A. Biomed's big theories, that they're the only ones to distinguish between on-demand therapy. Whitaker expressly teaches that as well. And Whitaker, likewise, we know is going to result in the arresting or regressing because L.A. Biomed said that the same lower doses of Tadalafil will do that. And where in Whitaker, again, to bring us back to Whitaker, where does it disclose that the treatment is limited to this patient population, the fibrotic aging diabetic population? Sure. On Whitaker page 13, which is appendix 6, 7, 5, 4, they're explaining their understanding of why they see this vascular conditioning effect. And they're explaining why do we see this vascular conditioning effect. And they say we think it's because there's reversal of penile circulatory dysfunction that arose from atherosclerosis or diabetes. And so what that means is that if you want to apply Whitaker, you're not going to apply it to a patient who has ED due to some injury, you know, some traumatic injury. You're going to apply it to a patient who has ED due to atherosclerosis or diabetes. So you're reading, in effect, backwards from this description of the hypothesized biology of the operation of this treatment to the patient group that is the subject, ultimately, of this method of treatment. Right. Their teaching is that it's working in these patients. Here's why it's working in these patients. So that's clearly the type of patients you want to administer it to, not some other category of patients who have ED due to psychological reasons or something else. And you say that that lines up well with the definition of the patient group in the claim? It includes this CBOD, this cavernosal fibrosis that is in claim 3. It's the same thing. Exactly. Exactly the same thing. Let's hear from the other side, and we'll save you a little time. Thank you, Your Honor. Ms. Davidson. All right. May it please the Court. The Board correctly determined that Whitaker does not anticipate the claims of the 903 patent. The Board's decision has a single basis, namely that Whitaker does not teach a treatment duration of at least 45 days. That is correct. Whitaker also does not teach the remaining claim limitations, administering a PDE5 inhibitor according to a continuous long-term regimen to individuals with penile fibrosis and are arresting or regressing that fibrosis. Counsel has made two main arguments here today regarding why the Board's ruling should be overturned based on Whitaker's teaching that administration be daily for as long as a patient suffers from erectile dysfunction, and also that LA Biomed's infringement positions are somehow an admission of anticipation. So turning first to what happened in district court, so LA Biomed accuses Lilly of inducing infringement of the 903 patent by instructing on the use of a drug called once daily Cialis. Those instructions are not prior art, and arguments about infringement based on those instructions for use of once daily Cialis are not admissions for the purpose of Whitaker, which is a different reference. So the principle of that which would literally infringe if later in time anticipates of earlier applies when you have the exact same product or method being accused of infringement also being publicly available before the invention date. The once daily Cialis product label and Whitaker are not coextensive. So Whitaker discloses chronic administration of a family of PDE5 inhibitors. It indicates that their full benefit is available after three days. For once daily Cialis, however, Lilly instructs users to take one tablet of Tadalafil specifically at approximately the same time every day. And unlike Whitaker, those instructions for once daily Cialis also contemplate that it will be administered to patients with penile fibrosis, including specifically those with cavernosal fibrosis or Peyronie's disease. Nor is there any inconsistency between LA Biomed's claim construction positions for validity and infringement. Both require that the PDE5 inhibitor be administered for at least 45 days and that there also be arrest or regression of penile fibrosis. Turning to 45 days and the statement in Whitaker that a PDE5 inhibitor should be preferably administered daily for as long as the patient suffers from erectile dysfunction in the absence of therapy. Lilly argues on appeal that that is an explicit disclosure of treatment for at least 45 days. So Lilly does not argue that the limitation is inherently disclosed. And its argument for explicit disclosure fails for both substantive and procedural reasons. So substantively, there are a number of holes in Lilly's argument. First, there simply was no finding of fact by the board that this statement in Whitaker means months or longer. The board simply summarized Lilly's argument and then indicated it was not persuaded on pages eight and nine of the board's decision. Nor would such a finding have been supported by substantial evidence. Daily for as long as the patient suffers for erectile dysfunction teaches nothing about the duration of treatment for penile fibrosis. It simply means take the drug for as long as you need it. And that's not a teaching of a specific time period. Nor does that reference to daily somehow teach duration. Again, daily is an interval. It's not how many times and how long. But what about the argument that evidence such as Dr. Goldstein's testimony would indicate that a person with a skill in the art would understand that as long as you need it for a patient in this patient class would be for a period of months, if not years? Right. So Dr. Goldstein has offered only his own unsupported testimony.  He is an expert in the field, but he also admitted that Whitaker's findings are new. That they had never been found before and that there's no underlying data in Whitaker to support them. And so there's nothing for him to base his assessment of duration on. So the only thing other thing he refers to was Dr. Bivilacqua's testimony during deposition. And again, Dr. Bivilacqua was asked how long it would take to resolve ED through things like diet or exercise or quitting smoking. And that simply bears no relevance to how long Whitaker's administration would take. Procedurally, Lilly also failed to point to this portion of Whitaker daily as long as the patient suffers from erectile dysfunction in its petition. And as the petitioner, it was required by 35 USC 312A3 to cite the specific portions of Whitaker that it alleges teach the claim limitations. It wasn't until LA Biomed pointed to, I apologize, what Lilly relied on in its petition exclusively was example six for the teaching of 45 days or more. And so it wasn't until after LA Biomed pointed to the flaws in example six and its patent owner response that Lilly came back on reply. Changed his argument and pointed now to this different portion of Whitaker. And having not identified that teaching in Whitaker and its petition, it was foreclosed from using it in the reply. And therefore it should not be a basis for reversal on appeal either. As for example six, the board's finding that this portion of Whitaker does not teach at least 45 days is supported by substantial evidence. The trials described in example six were of eight or 12 weeks, but there's simply no evidence that any of the study subjects in those trials took the study drug for 45 consecutive days. Example six even puts daily in quote marks acknowledging that the patients in that example were not dosing the drugs every single day. And nor has Lilly argued on appeal that example six teaches 45 days. There was also a question earlier about the patient population that Whitaker teaches. Again, properly construed an individual with at least one of the penile-tunical fibrosis and corporal tissue fibrosis requires that an individual actually have penile fibrosis. But that's not the population that Whitaker teaches. Giving PDE5 inhibitors too. Whitaker describes itself as useful for the treatment of sexual dysfunction and especially erectile dysfunction. You can find that in the abstract. The examples in Whitaker describe men who have mild to moderate ED with little or no restriction as to the etiology. Whitaker does not even use the word fibrosis. Council pointed to the teaching in Whitaker of vascular conditioning. But even the Whitaker inventors don't rely on that teaching. They say it's theorized but not relied on. Under Star Scientific, that is not a teaching for the purpose of obviousness. Even Dr. Goldstein, Lilly's expert, has admitted that a person of skill in the art would not know what vascular conditioning is. And again, that Whitaker has no data to support it. The other argument that Lilly made in briefing for reversal was that the board failed to consider all of the evidence. To put that into context, Lilly had filed more than 40 entirely new exhibits in conjunction with its reply brief. And LA Biomed had sought to exclude about 21 of those and portions of Dr. Goldstein's reply declaration and Dr. Bivilacqua's deposition testimony. And the board ultimately denied that motion as moot because it indicated that it did not rely on the challenged evidence in its final written decision. Of the challenged exhibits, however, Lilly only relied on two for the 45-day issue, which is the only issue addressed by the board in its final written decision. And those two exhibits were four paragraphs from Dr. Goldstein's reply declaration and a small portion of Dr. Bivilacqua's deposition testimony. And remand to consider that evidence is only appropriate if there's prejudice to Lilly, and here there is none. So that evidence relates to the same issue we've been discussing, which is the statement in Whitaker, as long as the patient suffers from erectile dysfunction. The board indicated that even if it were to accept that argument, it was not persuaded. It's an issue that Lilly waived, and it's duplicative of testimony that Dr. Goldstein gave in deposition that was otherwise before the board. And the only other evidence that Lilly has raised as improperly excluded is Dr. Bivilacqua's testimony regarding what makes the claims novel. So Lilly argues that Dr. Bivilacqua conceded anticipation because he stated that the only point of novelty in the claims was the biological mechanism. And clearly that's not what the claims are drafted to, and it's also not what Dr. Bivilacqua testified if you look at that passage. He says something very different. Are there any further questions? No questions. Thank you. We'll hear from Mr. Feldman. So starting with one of the points that LA Biobank's counsel just made about that there's no prejudice to Lilly. If the board found, by excluding evidence that Lilly had proffered in favor of anticipation, if the board found in our favor but didn't rely on all of our evidence, that of course would not be prejudicial to us. But what they did is they found against Lilly without relying on Lilly's evidence, without disputing Lilly's evidence, without addressing all of Lilly's evidence. And so especially if you read the board's decision, as LA Biomed does, that there was not a finding that as long as the patient suffers means months, then Lilly was clearly prejudiced because there's voluminous evidence in that record that that is the meaning of that as long as the patient suffers means at least months. And so by not making a finding, as LA Biomed contends, that as long as the patient suffers means months, and also not considering our evidence, that was prejudicial error by the board in ignoring evidence that supports our position. And the question of substantial evidence, there is only one meaning on the record of what as long as the patient suffers means. As Your Honor, Judge Bryson, you pointed out, Dr. Goldstein testifies extensively on what it means, and that is undisputed. There's no, they didn't cross him to say that's not what it means. Dr. Vivalacqua didn't offer a different meaning. In fact, his meaning is consistent with it. And so you need to look at what the reference means through the eyes of a person of ordinary skill. There's only one meaning on the record. Any conclusion that there was no finding that as long as the patient suffers means at least months, could not be supported by substantial evidence because there's only one meaning on the record. LA Biomed argues that we shouldn't even be arguing about this because Lilly somehow waived that portion of Whitaker. And so, of course, the petition in this case relied on anticipation by Whitaker, wasn't limited to example six. And Dr. Goldstein's petition, so for example, appendix page 251, the petition straightforwardly says that Whitaker anticipates. And then appendix page 5042, which is the Goldstein declaration filed with the petition, he relies on example six, but he says Whitaker including example six. He's never limited to example six. The standard, just after briefing was completed, perhaps the day after briefing was completed in this case, this court's opinion in Genzyme Therapeutic Products versus Byron Marin, 825 F3rd 1360, came out. And it addressed the idea of when is a party below in the PTAB prejudiced by not being able to respond to an argument. And what Genzyme says is that if you had actual notice of the argument and opportunity to respond, then you're not prejudiced. And that's what happened here. Not only did that happen here, but LA Biomed made no express dispute before the board about this argument about as long as the patient suffers. And so they don't have a live dispute to maintain at the board, on appeal. And moreover, they did expressly address as long as. If you look in their patent owner response, which is appendix page 585, they specifically address the quote of daily as long as the patient suffers. In the Bivilacqua declaration that was filed with their patent owner response, appendix page 8460, Bivilacqua refers to daily as long as the patient suffers. And they admit that they questioned Dr. Goldstein at his deposition about it. They had actual notice and actually responded on the question of Whitaker's disclosure of daily as long as the patient suffers. And so there's no argument about really having waived. The issue, in fact, is that LA Biomed doesn't have a live dispute before this board that they were prejudiced by the board allowing that argument in. They refer to a bunch of Dr., they, LA Biomed, refers to some deposition testimony from Dr. Goldstein that the exact meaning of vascular conditioning isn't specified and that there's no express data to support what vascular condition you're getting. And they provided that in argument in response to the question of what is as long as the patient suffers means. That's a complete non sequitur to refer to what is the meaning of vascular conditioning when the question is what does a person understand daily as long as the patient suffers to mean and again, there's only one meaning on the record. Okay. Thank you, Your Honor. Thank you both. We will take both of these cases under submission.